[Crim. No. 2822.   Second Appellate District, Division One.—July 6, 1936.]

THE PEOPLE, Respondent, v. JOHN HENRY WILSON, Appellant.

Henry E. Carter and Joseph T. Raycraft for Appellant.

U. S. Webb, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

YORK, J.—Appellant was charged with the crime of murder by information filed by the district attorney of Los Angeles County. He entered his pleas of "not guilty" and "not guilty by reason of insanity", and having duly waived his right to a trial by jury, he was tried by the court without a jury on his plea of "not guilty", the court having theretofore appointed alienists "to examine the defendant and investigate his sanity, and to report their findings thereon", etc. Appellant was adjudged guilty of the crime of murder in the second degree and sentenced by the court to San Quentin prison for the term prescribed by law. He appeals from the judgment and from the order by which his motion for a new trial was denied.

In his opening brief filed in this court on December 16, 1935, appellant makes the point that the judgment is not final and that the court was without jurisdiction to impose sentence upon him by reason of the fact that his plea of "not guilty by reason of insanity" has never been dis-

posed of, in that said appellant was never tried on the issue of "not guilty by reason of insanity".

On January 7, 1936, respondent filed its notice of motion for diminution of the record "to include and to be made part of the record of said cause on appeal, a supplemental clerk's transcript showing that on the 3rd day of January, 1936, the trial court made an order *nunc pro tunc* correcting its records to speak the truth in this, to show that appellant during the course of his trial on his plea of not guilty withdrew his plea of not guilty by reason of insanity", said order reading as follows:

"Order withdrawing plea of not guilty by reason of insanity. It appearing that the defendant John Henry Wilson in the above entitled action, having entered a plea of not guilty and not guilty by reason of insanity on July 19, 1935, in Department Long Beach A of the above entitled Court; and it further appearing that said plea of not guilty by reason of insanity was withdrawn at the request of counsel for the said defendant, and with the consent of the said defendant, on October 21, 1935 in the said Department Long Beach A; and it further appearing that the minutes of the said Department Long Beach A are silent concerning such withdrawal of plea,

"It is Hereby Ordered *nunc pro tunc*, as of October 21, 1935, that said plea of not guilty by reason of insanity is withdrawn and the said defendant proceeds to trial upon the single plea of not guilty; and it is further ordered that the minutes of the said Court shall be corrected in conformance with this Order. Dated January 3, 1936."

Turning our attention first to said motion for diminution of the record, the question presented is whether or not the order of the court entered *nunc pro tunc* after the date of the filing of appellant's opening brief and which, according to appellant's objections to the motion, was made *ex parte* and without notice to him or to his counsel, is a proper order. Unless that question can be answered in the affirmative, it is incumbent upon this court to remand the cause for trial of appellant upon the remaining issue, to wit, "not guilty by reason of insanity" (*People* v. *Marshall*, 99 Cal. App. 224, 229 [278 Pac. 258]), since the pronouncement of sentence is premature until it shall be determined whether or not appellant was sane at the time the offense with which

he is charged was committed. (*People* v. *Marshall*, 209 Cal. 540, 544, 545 [289 Pac. 629].)

The law appears to be that corrections may be made *nunc pro tunc,* but the record itself must show the error, or at least must show some basis for the correction, and in the exercise of its power to make such corrections, the court is not authorized to do more than to make its records correspond with the actual facts, and cannot, under the form of an amendment, correct a judicial error, or make of record an order or judgment that was never in fact made. (*Hegeler* v. *Henckell,* 27 Cal. 491; *Kaufman* v. *Shain,* 111 Cal. 16 [43 Pac. 393, 52 Am. St. Rep. 139]; *St. Clair* v. *Joos,* 66 Cal. App. 398 [226 Pac. 623]; 18 Cal. Jur. 665, 666.)

In 42 Corpus Juris, page 536, section 223, subdivision 3, it is said: "Clear and satisfactory evidence of a previous order is necessary. While there is authority to the effect that an order may be entered *nunc pro tunc* on parol evidence if it is clear and sufficient, the rule, sustained by the decisions in some jurisdictions, is that an order should be entered *nunc pro tunc* on written evidence only, and that the best evidence is some memorandum, minute, or other data of record or in the authentic files of the cause."

Further, the case of *Inland Irving Nat. Bank of Chicago* v. *American Flange & Mfg. Co.,* (C. C. A., 7th Circuit, Jan. 1935) 75 Fed. (2d) 533, at 535, holds: "The making of an order *nunc pro tunc* is for the purpose of correcting the record and making it speak the truth. When an order of this character is made, there must be something to amend. In some cases the record itself may be entirely silent upon the subject, yet if there should be a note or memorandum upon the judge's docket from which it can be seen that the court, at the time, made some order or direction that has not found its way into the common-law record, then the court is warranted in making such an order *nunc pro tunc.* But it has never been recognized as a proper use of the order to make a new record or to give a litigant 'something to stand upon' in a court of review. In this case, the purpose of the motion was to make an entirely new record or, to be more generous, to supply an omission which the applicant desired to have in the record upon which to base its argument in the court of review. It comes within none of

the rules applicable to the allowance of *nunc pro tunc* orders.''

We have scanned the record carefully, and find nothing, either in the clerk's transcript or in the transcript of the evidence, indicating that appellant withdrew his plea of ''not guilty by reason of insanity''. Respondent in its reply brief criticizes appellant's counsel for not directing the court's attention to the fact that the second plea had not been disposed of at the time sentence was pronounced. While we believe this could very well have been done, the omission to do so could not possibly be construed as a waiver on the part of appellant to be tried upon his second plea. In this connection, it was said in *People* v. *Marshall*, 99 Cal. App. 224, 228 [278 Pac. 258], as follows: ''The fact that the defendant did not object to such a proceeding would no more confer jurisdiction in one instance than in the other. Besides, it must be borne in mind that it is the policy of the law to safeguard the interests of the insane, and to that end to require the ascertainment of the fact that a person charged with crime was sane at the time of its commission. Where that issue is raised, before any penalty which might be imposed for a violation of the law can be so imposed, it is inconsistent with such a policy and with such principle that one whose sanity is in question can be held to have waived the right to have that issue tried and determined by failure to object to any action or proceeding until his sanity shall have been determined, and while that issue is still pending.''

It is our opinion that the order *nunc pro tunc* is of no force or effect; therefore, the motion for diminution of the record is denied.

Appellant also strenuously contends that there was not sufficient evidence to sustain the judgment, one of the reasons advanced by him being that the death of the deceased was probably cause by eating some kind of custard while confined in the hospital after his injury. However, there is direct evidence that the decedent's injury which resulted in death was ''a traumatic injury, which is caused by force; and there was force applied to create the injury''.

Appellant also objects to the introduction of a confession upon the ground that the *corpus delicti* was not proven before the introduction of such confession. The order of proof makes no difference in a case of this kind,

where, after the introduction of such confession, there was sufficient evidence introduced to show that the appellant had been in a fight with the deceased a short time before deceased had been examined by a doctor, and the doctor's testimony was introduced showing the condition of deceased at the time was caused by force and violence, which force and violence was the cause of death. There was strong circumstantial evidence connecting the appellant, not only with the injury to deceased, but there was direct and positive evidence showing that appellant had threatened deceased a short time before he was injured, and that appellant had had a fight with deceased in which altercation appellant had been hurt, when he was ejected from the cannery, where deceased was employed, by several of the employees thereof.

There was direct testimony given by a private patrolman, who saw the deceased and an unidentified man in a fight, in which the deceased fell down and the other man ran away, that the deceased received bruises on his face, was bleeding from the mouth and had one of his teeth knocked out; that deceased was taken to a doctor, who reported that "there might be some fracture of the skull" and that the deceased had been taken to the hospital where he later died. This evidence would justify the court in admitting the testimony of two police officers, who stated that appellant told them that he "took a club, concealed in his clothes, to work with him Monday evening, June 17th, about 6:30 o'clock. He hid the club in his locker while he was at work and quit about 11:30 P. M. He went to a cafe near by and then returned to his locker, got his club and concealed it in his clothes again."

This evidence was followed by testimony that appellant was seen in the plant next door to where deceased worked at about 12:30 A. M. of June 18th, and that about 1:00 A. M. on the said morning the deceased was seen to leave the plant where he worked. Shortly thereafter, a private patrolman saw the altercation referred to and testified that one of the men fell down and the other ran away.

The autopsy performed on the body of deceased showed that he had a "basal fracture of the skull and introcranial hemorrhage, contributory to this being coronary thrombosis", and that there was no food poisoning. There was

also testimony by the autopsy surgeon to the effect that the injury could not have been self-inflicted.

There was evidence that appellant attempted to get a friend to testify to a false alibi, and that the officers when searching the premises of appellant found a rubber-covered club with which, he later told the officers, he had hit the deceased on the left side of the head. Appellant also admitted to the officers that he had been trying to fix up an alibi, but on the stand he admitted this alibi was untrue. After seeing deceased in the mortuary and having identified him, appellant was asked, "Do you notice that black eye he's got?" and appellant answered, "Yes, I can see that.— But those bruises on his arm, I couldn't have caused that.— Some car must have hit him." Appellant later told the officers in effect that he was so mad at Sam (referring to deceased) for having beaten him on Sunday, that he waited until Sam had finished work Tuesday morning and tried to get even with Sam. On the same day appellant made a statement in writing and signed it, in which he stated that he waited for the deceased until he got through work and then went around the cannery and met deceased; that he armed himself with a brick, and hit deceased on the left side of the head with the brick; that deceased fell when appellant hit him and that a car came around the corner and that he "just hit deceased one good lick". Appellant was later taken to the scene of the altercation by police officers, at which time he admitted that he had struck deceased on the occasion in question. Thereafter, appellant was taken to his home where he stated to the officers that he was going to plead guilty so that he would not hang. On the same day, he made a second written statement to the officers in which he said he had hit deceased with a club, the end of which was covered with a piece of rubber tubing; that he had met deceased on June 17th late in the afternoon, at which time deceased warned him to be careful and stay away from the cannery; that appellant then went home and got his club and after work hung around the plant next door to the place where deceased worked, until he saw deceased leave his place of employment, whereupon appellant went around the back way and met deceased; that at the point where they met, a car came along and deceased recognized appellant; that appellant then knew that he had

to do his work quick and get away, so he hit deceased one lick on the left side of the head with the club and ran; that he did not want to kill deceased, but just wanted to get even with him for the beating up deceased had given him.

When appellant was on the witness stand in his own defense, however, he testified that on Tuesday morning, June 18th, he met deceased on the corner and as he started to pass, deceased grabbed him and struck him four or five times and then drew a knife on him; that appellant then started to run and saw a club or stake on the ground, which he grabbed and hit deceased with it; that deceased fell down on his elbow and knee and appellant walked across the street; that deceased got up and started to run; that appellant followed deceased and saw him go back into the cannery. Appellant denied that he hit deceased with the club that the officers found at his home and which he had previously admitted to the officers he had used on that occasion.

Although appellant testified that he was offered probation if he would make a written statement to the officers, the officers when called in rebuttal testified that they made no promises to appellant in order to get him to make a statement.

We think the evidence was clearly sufficient to sustain the judgment pronounced against appellant on November 1, 1935, on his first plea, i. e., "not guilty", but that judgment was prematurely entered by reason of the failure of the trial court to pass upon appellant's plea of "not guilty by reason of insanity". Therefore, the judgment is reversed, and the cause remanded for trial upon the remaining issue, "not guilty by reason of insanity". (*People* v. *Marshall,* 209 Cal. 540, 548 [289 Pac. 629].) If appellant is found "not guilty by reason of insanity", the court will then take proper steps in the premises; if found sane upon trial of the sole remaining issue, the court will resentence appellant, as provided by law. The order of the trial court denying motion for new trial, made herein, is affirmed.

Houser, P. J., and Doran, J., concurred.